STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

MARTIS ANN ALEX (SBN 77903)
malex@labaton.com
DANIEL R. LEATHERS (*pro hac vice*)
dleathers@labaton.com
BRIAN R. MORRISON (*pro hac vice*)
bmorrison@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PATRICIA LASSEN, SCOTT GOLDSTONE, JEFFREY SANDLER, MICHELLE SMITH, JOHANA GARCIA, and ROBERT FARBER, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | No. 2:15-cv-06491-AB-MRW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION TO DISMISS**<br><br>Date:  June 27, 2016<br>Time:  10:00 a.m.<br>Place:  Courtroom 4<br>Judge:  Hon. André Birotte, Jr. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND .................................................................................. 3

III.  ARGUMENT ....................................................................................... 6

A.   Legal Standard ........................................................................... 6

B.   Plaintiffs Have the Requisite Article III Standing ..................... 7

1.   Plaintiffs allege injuries that are actual and imminent. ................. 7

2.   Plaintiffs' injuries are fairly traceable to Nissan. .......................... 9

3.   Plaintiffs also have standing to seek injunctive relief. ................. 11

C.   The Court Should Reject Nissan's Preemption and Primary Jurisdiction Arguments ............................................................. 13

D.   Plaintiffs' Claims for Breach of the Implied Warranty Should Be Allowed to Proceed ............................................................. 14

1.   New York law does not require privity for "things of danger." .......................................................................................... 14

2.   Plaintiffs' vehicles are not merchantable because they each suffer from a deadly safety Defect. ....................................... 15

E.   Plaintiffs Adequately Allege That Nissan Omitted Material Facts and Breached Its Duty to Disclose a Safety Defect ......... 16

1.   Nissan has a duty to disclose the Defect because it poses an unreasonable safety risk. ........................................................... 16

2.   Nissan has a duty to disclose the Defect based on its exclusive or superior knowledge of the Defect and related safety risks. ................................................................... 19

3.   Plaintiffs amply allege that Nissan's omissions caused harm. ................................................................................ 22

F.   Plaintiffs Properly Plead Unjust Enrichment and Other Equitable Claims ....................................................................... 24

IV.   CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Target Corp.*,
  2014 U.S. Dist. LEXIS 151154 (C.D. Cal. Mar. 3, 2014) ..................................... 13

*Apodaca v. Whirlpool Corp.*,
  2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ......................................................... 17

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ............................................................. 17, 21

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .................................................................................. 24

*Barnes v. Sea Haw. Rafting, LLC*,
  2015 WL 9459893 (D. Haw. Dec. 22, 2015) ......................................................... 13

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .................................................................................... 8

*Boysen v. Walgreen Co.*,
  2012 WL 2953069 (N.D. Cal. July 19, 2012) ....................................................... 11

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) .............................................................................. 7

*Burman v. Richmond Homes Ltd.*,
  821 P.2d 913 (Colo. App. 1991) ............................................................................. 16

*Cabral v. Supple, LLC*,
  2012 WL 4343867 (C.D. Cal. Sept. 19, 2012) ....................................................... 12

*Cabrales v. Castle & Cooke Mortg., LLC*,
  2015 WL 3731552 (E.D. Cal. June 12, 2015) ........................................................ 24

*Clancy v. Bromley Tea Co.*,
  308 F.R.D. 564 (N.D. Cal. 2013) .............................................................................. 7

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013).................................................................................. 8, 10

*Clyne v. Walters*,
  2009 WL 2982842 (D. Colo. Sep. 16, 2009) ........................................................ 24

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................................... 15

*Contreras v. Toyota Motor Sales USA, Inc.*,
  2010 WL 2528844 (N.D. Cal. June 18, 2010), *aff'd in part, rev'd on
  other grounds*, 484 F. App'x 116 (9th Cir. 2012) .................................................. 9

*Cuviello v. City & Cnty. of San Francisco*,
  940 F. Supp. 2d 1071 (N.D. Cal. 2013) ................................................................. 6

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) .............................................................................. 16

*Decker v. Mazda Motor of Am., Inc.*,
  2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) ....................................................... 17

*Derienzo v. Trek Bicycle Corp.*,
  376 F. Supp. 2d 537 (S.D.N.Y. 2005) ................................................................... 15

*Doll v. Ford Motor Co.*,
  814 F. Supp. 2d 526 (D. Md. 2011) ...................................................................... 14

*Durkee v. Ford Motor Co.*,
  2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ....................................................... 24

*Ehrlich v. BMW of N. Am., LLC*,
  801 F. Supp. 2d 908 (C.D. Cal. 2010) .................................................................. 17

*Elias v. Hewlett-Packard Co.*,
  2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ........................................................... 19

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................... 6

*Estrada v. Johnson & Johnson*,
  2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ....................................................... 11

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................... *passim*

*Goldberg v. Kollsman Instrument Corp.*,
   12 N.Y.2d 432 (N.Y. 1963) ............................................................. 14, 15

*Grodzitsky v. Am. Honda Motor Co.*,
   2013 WL 2631326 (C.D. Cal. June 12, 2013) ........................................ 7

*Harris v. Las Vegas Sands L.L.C.*,
   2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) ....................................... 12

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ................................... 12, 13

*Herremans v. BMW of N. Am., LLC*,
   2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) .................................... 18, 22

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ........................................................... 24

*Hubbard v. GMC*,
   1996 WL 274018 (S.D.N.Y. May 22, 1996) .......................................... 14

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
   285 F.R.D. 573 (E.D. Cal. 2012) ....................................................... 19

*JTH Tax, Inc. v. Gouneh*,
   721 F. Supp. 2d 132 (N.D.N.Y. 2010) ................................................ 25

*Kearney v. Hyundai Motor Am.*,
   2010 WL 8251077 (C.D. Cal. Dec. 17, 2010) ...................... 17, 18, 19, 22

*Keegan v. Am. Honda Motor Co., Inc.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ......................................... *passim*

*Koehler v. Litehouse, Inc.*,
   2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ...................................... 11

*Lanovaz v. Twinings N. Am., Inc.*,
   2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ........................................... 12

*Larsen v. Trader Joe's Co.*,
   2012 WL 5458396 (N.D. Cal. June 14, 2012) ..................................... 12

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ............................................... 23

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013)....................................................... 9

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 WL 8379784 (C.D. Cal. May 4, 2009)............................... 14, 17, 19

*Meaunrit v. Pinnacle Foods Grp., LLC*,
   2010 WL 1838715 (N.D. Cal. May 5, 2010) ............................................ 9

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014).................................................. 15, 19

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014)..................................................... 23

*Philips v. Ford Motor Co.*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015) ........................................... 24

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
   489 F.3d 1279 (D.C. Cir. 2007)......................................................... 9, 22

*Ramel v. Chasebrook Constr. Co.*,
   135 So. 2d 876 (Fla. Dist. Ct. App. 1961).............................................. 16

*Ries v. Ariz. Bevs. USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) .......................................................... 12

*Shibata v. Lim*,
   133 F. Supp. 2d 1311 (M.D. Fla. 2000) ................................................. 25

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................ 6

*State v. Gen. Motors Corp.*,
   466 N.Y.S.2d 124 (N.Y. Sup. Ct. 1983).................................................. 16

*Swanson v. U.S. Forest Serv.*,
   87 F.3d 339 (9th Cir. 1996) ................................................................... 13

*Tait v. BSH Home Appliances Corp.*,
   2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) ........................................ 21

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012).......................................................... 22

*Taragan v. Nissan N. Am., Inc.*,
   2013 WL 3157918 (N.D. Cal. June 20, 2013) ..................................................... 8, 21

*Townley v. Miller*,
   722 F.3d 1128 (9th Cir. 2013) ................................................................................ 9

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011)....................................................... 7, 8, 22, 23

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010)............................................................ *passim*

*Trazo v. Nestlé USA, Inc.*,
   113 F. Supp. 3d 1047 (N.D. Cal. 2015)................................................................ 24

*United States v. Zuno-Arce*,
   25 F. Supp. 2d 1087 (C.D. Cal. 1998), *aff'd*, 209 F.3d 1095 (9th Cir.
   2000) ............................................................................................................... 13

*Whitson v. Bumbo*,
   2009 WL 1515597 (N.D. Cal. Apr. 16, 2009)......................................................... 9

*Williams v. Cnty. of Alameda*,
   26 F. Supp. 3d 925 (N.D. Cal. 2014)................................................................... 20

*Willis v. Buffalo Pumps Inc.*,
   34 F. Supp. 3d 1117 (S.D. Cal. 2014) ................................................................. 17

*Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) ............................................................................... 6

# I.     INTRODUCTION

In the past several years alone, at least fourteen people have died and many more have sustained life-threatening injuries caused by deadly carbon monoxide emissions from their cars that were equipped with Keyless Fobs.  Because those vehicles were not equipped with an automatic engine shutoff to ensure that the vehicle's engine did not continue to emit deadly carbon monoxide long after the car was parked ("Auto-Off"), innocent drivers, families, and bystanders suffered from carbon monoxide poisoning.  Not one of those deaths or injuries would have occurred if the cars had been equipped with Auto-Off.

Unlike with traditional physical keys, where a driver was assured that the engine must be off if she parks the car and walks away with the key in hand, Keyless Fobs have nothing to do with shutting off the engine.  Consequently, unlike with traditional keys, drivers can and do park their cars and walk away with the Keyless Fob in hand, not realizing until they return to their cars that the engine is still running and emitting deadly carbon monoxide.

As detailed in Plaintiffs' First Amended Class Action Complaint (the "FAC" or "Complaint"), Defendant Nissan North America, Inc. ("Nissan") knew about the serious safety risks associated with a *Keyless Fob system designed without Auto-Off* (the "Defect"), and knew that people were being killed and injured as a result.  But Nissan chose not to fix the Defect or to disclose its existence to consumers.  Plaintiffs allege that they each purchased or leased a Keyless Fob vehicle from Nissan that he or she otherwise would not have purchased or leased, or paid more for it than he or she otherwise would have paid, if Nissan had disclosed the Defect.  They bring various state law claims seeking economic damages for their overpayments, as well as injunctive relief to stop Nissan's ongoing deceptive marketing, to remedy the dangerous Defect, and to notify class members about the defective nature of their vehicles.

1    Now, in its Motion to Dismiss, Nissan argues that Plaintiffs lack Article III

2  standing, that Plaintiffs' request for injunctive relief is barred by preemption or

3  primary jurisdiction, and that the Colorado and New York implied warranty claims fail

4  as a matter of law.  Nissan also contends that it had no duty to disclose the dangerous

5  Defect, or that the Defect did not cause harm, or that the unjust enrichment claims (or

6  other equitable claims) must fail because Plaintiffs have adequate remedies at law.

7  Simply stated, Nissan's motion to dismiss fails as a matter of law.

8    *First*, Nissan's argument that Plaintiffs lack standing to assert any claims is off

9  point.  Plaintiffs allege that they already suffered actual economic loss and therefore

10  have Article III standing.  Nissan's reliance on cases where the plaintiffs did not allege

11  any manifestation of the defect or that they actually suffered any injury (physical or

12  economic) is therefore unavailing.  Similarly, Nissan's argument that Plaintiffs cannot

13  seek injunctive relief is unpersuasive, and has been rejected by many federal courts

14  that have stressed the importance of California's consumer protection statutes.

15    *Second*, the Court should reject Nissan's preemption and primary jurisdiction

16  arguments.  Nissan makes this throw-away argument in two perfunctory sentences,

17  improperly skirting the page limits by relying on another defendant's arguments in a

18  separate motion to dismiss.  Nissan's attempt to incorporate another defendant's

19  argument by reference is improper, and regardless, Nissan ignores federal decisions

20  that soundly reject the same arguments raised in prior vehicle defect class actions.

21    *Third*, Plaintiffs' implied warranty claims contain sufficient factual allegations

22  to plausibly suggest entitlement to relief.  At this stage of the litigation, Plaintiffs'

23  allegations that the vehicles suffer from a dangerous Defect are enough to support the

24  claim that the vehicles are not merchantable.

25    *Fourth*, Plaintiffs adequately allege that Nissan had a duty to disclose the

26  Defect.  The duty to disclose exists here because the lack of Auto-Off poses a genuine

27  safety risk, and because Nissan had exclusive or superior knowledge of the Defect.  At

28  the same time, Plaintiffs amply allege that Nissan's failure to disclose material facts

about a safety defect inevitably caused actual harm.

*Finally*, Plaintiffs properly plead unjust enrichment claims in the alternative to other claims.  The Ninth Circuit and other courts are clear that it is improper to dismiss unjust enrichment claims at the pleading stage merely because there eventually may be adequate remedies at law.  In any event, Plaintiffs sufficiently plead facts supporting both their right to equitable relief and the inadequacy of remedies at law.

As described more fully below, Nissan's motion fails as a matter of law.

## II.   BACKGROUND

The Keyless Fobs are marketed as the ultimate driving convenience.  Drivers can keep the Fobs in their pockets or bags and can start the car by pressing a button on the dashboard without having to fumble for a traditional key.  *See* ¶ 2.[1]

However, this convenience has resulted in deadly consequences.  With traditional physical keys, once a driver removed the key from the ignition switch, the engine could no longer operate.  ¶ 3.  Drivers knew that if they removed the key from the vehicle, the engine was off.  But Keyless Fobs operate very differently.  Unlike with traditional keys, the Keyless Fob has nothing to do with turning off the engine. ¶ 6.  Engines no longer turn off simply because the car is parked and the Fob is removed from the vehicle.  *Id.*  For Plaintiffs' vehicles, as with other vehicles listed in Exhibit 1 to the Complaint (the "Affected Vehicles"), the driver can stop the vehicle, put it in park, and exit with the Fob, but the engine can continue to run until the gas tank is empty, no matter how far away the driver goes from the car, and no matter how long the engine is running.  *Id.*

Keyless Fobs are often offered as part of an "upgrade" or "technology" package that costs consumers additional money.  ¶ 8.  In vehicles that come with a Keyless Fob as standard equipment, the cost of the hardware and technology is built into the

---

[1] Except where otherwise noted, references to "¶__" are to paragraphs in the FAC (Dkt. No. 111).

vehicle price.  In either case, Plaintiffs and other consumers pay additional money for the Keyless Fobs.  *Id.*  But this added convenience comes with a dangerous safety risk because Nissan has failed to institute Auto-Off on the Affected Vehicles.  ¶ 12.

Tragically, as detailed in Plaintiffs' FAC, many drivers were exposed to deadly levels of carbon monoxide that seeped into their homes after the car was parked in the garage and, unbeknownst to the driver, the engine continued to run.  Many innocent families have been killed or injured by carbon monoxide poisoning even in just the past six months.

A young mother parked her car in the garage and was awakened in the middle of the night by her thirteen-month-old son screaming.  She and her son were saved by emergency medical treatment, but both would have died from carbon monoxide poisoning had they stayed in their house just twenty minutes longer.  ¶ 18.

A father in Issaquah, Washington, parked the family minivan in the garage, and the family of six was later rushed to the hospital for emergency treatment for carbon monoxide poisoning.  The seventeen-month-old baby required three days of intensive treatment in a hyperbaric chamber, and three of the responding firefighters also required medical attention.  *Id.*

Earlier, a college professor in Queens, New York, parked her car in her garage and woke up the next morning with permanent brain damage caused by carbon monoxide poisoning.  Her partner was dead.  ¶ 21.

These and many other tragedies were caused by carbon monoxide poisoning from cars equipped with a Keyless Fob.  Unfortunately, these are not isolated stories.  The Complaint details *at least* fourteen wholly avoidable deaths and many more serious injuries—all from carbon monoxide poisoning, and all of which would have been prevented if the vehicles had Auto-Off.  ¶ 17.[2]

---

[2] Plaintiffs' counsel have learned of at least five more deaths since filing the FAC in November 2015, bringing the total number of avoidable deaths to nineteen.  If the Court requests or requires further allegations about the safety hazard posed by the

1    Since the time that Nissan first marketed the Affected Vehicles, and at the time

2  Plaintiffs each purchased or leased an Affected Vehicle, the Keyless Fob systems

3  lacked Auto-Off and posed a serious risk of carbon monoxide poisoning.  ¶ 214.  At

4  the same time, Nissan was in a superior position to know about the lack of Auto-Off

5  and the unreasonable safety hazard created by the lack of Auto-Off.  ¶¶ 213-14.  As

6  alleged in the FAC, Nissan's exclusive or superior knowledge of the Defect arises

7  through a variety of sources that include select news reports, recalls, patent

8  applications, personal injury lawsuit filings, NHTSA complaints, non-binding NHTSA

9  proposals, and Nissan's partial implementation of Auto-Off.  ¶¶ 164-211.  In fact,

10  Nissan installed an automatic shut-off system for many of its remote-start vehicles to

11  shut off the engine if the vehicle is left running in pre-start mode in order to limit

12  deadly carbon monoxide emissions.  ¶¶ 205-11.[3]  Nissan failed to disclose the lack of

13  Auto-Off and related safety risk to consumers, inducing consumers to purchase or

14  lease one of the Affected Vehicles and to pay a premium price in the process.  ¶ 214.

15    Plaintiffs purchased or leased Affected Vehicles not knowing that the vehicles

16  lacked Auto-Off.  ¶¶ 41, 56.  Prior to the purchase or lease, Plaintiffs reviewed Nissan

17  pre-sale materials, but none of those pre-sale materials warned them that their vehicles

18  lacked Auto-Off or that the lack of Auto-Off poses a serious safety risk.  ¶¶ 47, 62.

19  Although Plaintiffs have been fortunate enough not to suffer carbon monoxide

20  poisoning, they nevertheless have each experienced the Defect—they have each

21  parked their vehicles, removed the Keyless Fob, walked away, and later discovered the

22  vehicles' engines were still running.  ¶¶ 49, 64.  Plaintiffs would not have purchased

23  or leased their vehicles, or would have paid less for the vehicles, had they known

24

25

26  Defect, Plaintiffs' counsel could and would detail the circumstances of these
    additional deaths.

27    [3] In a remote-start vehicle, a driver can use an electronic fob to start the engine

28  remotely to warm or cool the vehicle before entering.

about the lack of Auto-Off and related safety risks.  ¶¶ 54, 70.[4]

### III.    ARGUMENT

**A.    Legal Standard**

Nissan's Motion to Dismiss the FAC fails as a matter of law, and the Court should deny the motion in its entirety.  A motion to dismiss challenges the legal sufficiency of the claims alleged.  While the complaint must plead enough facts to render the claims plausible on their face, a claim has plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1079 (N.D. Cal. 2013).[5]  "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Additionally, under Federal Rule of Civil Procedure 9(b), the fraudulent omission claims asserted by Plaintiffs "can succeed without the same level of specificity required by a normal fraud claim." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.* ("*Unintended Acceleration MDL*"), 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (Rule 9(b) requirements relaxed for fraudulent omission claims "because '[r]equiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission'").

Plaintiffs have alleged sufficient factual allegations that "plausibly suggest an entitlement to relief." *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[6]

---

[4] Nissan suggests that, because Plaintiffs do not allege that their garages are attached to their homes, there can be no risk of any injury.  That suggestion ignores many of the tragic stories included in the Complaint that detail how drivers often park their vehicles in enclosed spaces, including at friends' or families' houses.

[5] Unless otherwise indicated, all internal citations and quotation marks are omitted.

[6] Moreover, dismissal "without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment." *Eminence Capital, LLC v.*

**B.      Plaintiffs Have the Requisite Article III Standing**

Nissan argues that Plaintiffs lack standing to assert any claims because their injuries are neither actual nor imminent (Motion to Dismiss ("MTD") at 8-9), that the injury in any event is not "fairly traceable" to Nissan (MTD at 11-12), and that Plaintiffs lack standing to seek injunctive relief (MTD at 12-14).  Each of Nissan's arguments has been soundly rejected by California federal courts, particularly in the context of vehicle defect class actions.

**1.      Plaintiffs allege injuries that are actual and imminent.**

Nissan's argument, that Plaintiffs have not sufficiently alleged injury-in-fact to confer Article III standing, is wholly without merit, particularly at this stage of the litigation where "general factual allegations of injury resulting from the defendant's conduct may suffice."  *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1160. Nissan argues that standing requires Plaintiffs to allege an injury that is actual *or* imminent.  Plaintiffs do both.[7]

First, Plaintiffs allege that they have already suffered *actual* economic losses. Plaintiffs allege that they overpaid for the vehicles because the price of the defective Keyless Fob was built into the vehicles' prices.  *See* ¶ 39.  The Complaint is also replete with allegations that the Defect has diminished the value of Plaintiffs' vehicles. *See* ¶¶ 39, 226, 271; *see also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("A vehicle with a defect is worth less than one without a defect.").

Because Plaintiffs allege that they already have actually suffered economic losses, they necessarily have Article III standing.  The Court in the *Unintended*

---

*Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15(a)(2). Plaintiffs respectfully request leave to amend if necessary.

[7] Nissan makes a one-sentence, footnoted argument that Plaintiffs also lack standing to bring claims as to any other Nissan Affected Vehicles.  MTD at 14 n.5. This argument lacks support in the case law, and at any rate is more properly addressed in a motion for class certification.  *See Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 569 (N.D. Cal. 2013); *see also Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326, at *4 (C.D. Cal. June 12, 2013); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011).

*Acceleration MDL* expressly held that "overpayment, loss in value, or loss of usefulness is sufficient to confer standing." 754 F. Supp. 2d at 1162.

Nissan relies on *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), to support its argument that Plaintiffs have not alleged injury, but that case is very different. In *Birdsong*, the plaintiffs alleged that Apple iPods were defective because they were capable of playing at 115 decibels and consumers may listen at unsafe levels, causing hearing loss. *Id.* at 961. But the plaintiffs did not allege that they or anyone else had ever experienced the defect. *Id.* The court there found that the alleged diminution in value did not constitute injury because it rested on a hypothetical risk of hearing loss that had never occurred. *Id.* Unlike in *Birdsong*, Plaintiffs here have actually experienced manifestations of the dangerous safety defect that has resulted in at least 14 avoidable deaths and many more serious injuries.

This case is also quite different from *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013), where the plaintiffs did not allege they had actually been injured or that they had experienced the conduct complained of. The plaintiffs in *Clapper* pled only that they *suspected* that surveillance interceptions of human rights organizations *might* have occurred, that their client communications *may* be intercepted in the future, and that they *may* then have to incur expenses to protect confidentiality. *Id.*

Nissan's reliance on *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918 (N.D. Cal. June 20, 2013), is also misplaced. In *Taragan*, contrary to Nissan's representation, none of the plaintiffs alleged that they "personally experienced" a manifestation of the alleged defect. *Id.* at *4. Nissan confuses the risk of physical injury (a risk that was too attenuated in *Taragan*) with the well-established rule that economic damages are sufficient to confer Article III standing (an issue never even addressed in *Taragan*). Once Plaintiffs sufficiently plead a safety defect, "the economic losses resulting from the defect are readily established: defective cars are simply not worth as much." *In re Toyota*, 790 F. Supp. 2d at 1163.

Nissan's reliance on other cases where none of the plaintiffs had actually

experienced the alleged defect fares no better.[8]  *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293-94 (D.C. Cir. 2007) (neither non-profit organization nor its members alleged that they had suffered any actual physical or economic injuries from NHTSA regulation being challenged); *Townley v. Miller*, 722 F.3d 1128, 1133-34 (9th Cir. 2013) (finding that some plaintiffs who had not voted in election had no standing to challenge ballot measure because injury was "conjectural or hypothetical," but concluded other plaintiffs did suffer injuries "[in] light of their stated intent to cast ballots"); *Meaunrit v. Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *3 (N.D. Cal. May 5, 2010) (none of plaintiffs had encountered a contaminated frozen pot pie, and plaintiffs failed to allege that any other consumers had become ill from such contamination); *Contreras v. Toyota Motor Sales USA, Inc.*, 2010 WL 2528844, at *6 (N.D. Cal. June 18, 2010) (no standing where plaintiffs had not experienced any manifestation of vehicle defect and failed to allege that it was reasonably likely that they would experience defect in future), *aff'd in part, rev'd on other grounds*, 484 F. App'x 116 (9th Cir. 2012); *Whitson v. Bumbo*, 2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009) (finding no standing where plaintiff did not allege she had ever even used allegedly defective child seat, that she had experienced any manifestation of defect, or that she was harmed by defect).

### 2. Plaintiffs' injuries are fairly traceable to Nissan.

Nissan also argues that Plaintiffs' injuries are not fairly traceable to Nissan's conduct because it believes that Plaintiffs' injuries were not suffered *as a result of* the Defect.  Nissan's argument that Plaintiffs fail to allege "but-for causation" is belied by Plaintiffs' allegations that, if Nissan had disclosed the lack of Auto-Off prior to the time Plaintiffs purchased or leased their vehicles, Plaintiffs would not have overpaid

---

[8] Nissan's reliance on *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013), is also misplaced.  Unlike the product defect claims here, the claims in *LinkedIn* were "based on an alleged breach of contract" where the plaintiffs failed to allege "an increased risk of future harm."  *Id.* at 1093-94.

for their vehicles that are equipped with a dangerous defect, and would not have purchased or leased vehicles that have diminished in value.

Nissan once again largely relies on *Clapper*, a case where the plaintiffs did not allege they had actually been injured or that they had experienced the conduct complained of.  133 S. Ct. at 1148.  The Court found that the injury in *Clapper* was hypothetical, and the Court's conclusion that it was not "fairly traceable" to the Foreign Intelligence Surveillance Act is unsurprising given the "speculative chain of possibilities" presented by the plaintiffs.  *Id.* at 1150.  The Complaint here, on the other hand, is replete with allegations that Plaintiffs and other consumers purchased or leased their vehicles without knowledge that the vehicles lacked Auto-Off, which is a direct consequence of Nissan's failure to disclose such a Defect.  *See* ¶¶ 3, 29, 34, 36, 214.  Viewed in totality, the FAC alleges more than enough facts to establish that Plaintiffs injuries are traceable to Nissan's failure to disclose the Defect.

Plaintiffs suffered economic losses when they overpaid for their vehicles without knowing that the vehicles lacked Auto-Off, which Nissan failed to disclose. Nissan now argues that the risk of carbon monoxide poisoning is avoidable if Plaintiffs use common sense, but Plaintiffs allege that Nissan eliminated the physical and psychological connection between the vehicles and physical keys, and that drivers do not expect that the engine will continue to run even after parking and removing the Keyless Fob.  *See* ¶¶ 12-14.

Nissan also argues that the risk of carbon monoxide poisoning is "inherent in any internal-combustion vehicle, whatever sort of key it uses."  MTD at 12.  That argument is not only flawed, but it wholly ignores Plaintiffs' detailed allegations that the Keyless Fob ignition system, which operates very differently than traditional physical keys, substantially increases the risks of carbon monoxide poisoning and confuses reasonable drivers.  *See* ¶ 6 ("Critically, the Keyless Fob *has nothing to do with turning off the engine*."); ¶ 13 (Nissan "failed to undertake proper human factors analyses necessary to understand and address the hazards associated with replacing the

Physical Key with a Keyless Fob."); ¶ 14 ("As a result, there is an inherent and imminent risk that the millions of drivers, including those who grew accustomed to using a Physical Key to turn off a vehicle—which traditionally was a simple and predictable task—fail to appreciate that the Keyless Fob plays no role in turning off a Keyless Fob-equipped vehicle's engine."); ¶ 16 (highlighting confusion between physical keys and Keyless Fobs). Plaintiffs' allegations establish that purchasing a vehicle with the Defect put them at a substantially increased risk of carbon monoxide poisoning, and that had Plaintiffs known about the Defect, they would have paid less or not purchased or leased the vehicles. And, if Plaintiffs had purchased or leased vehicles equipped with physical keys or with Auto-Off, they would have been assured that the vehicle engine would be turned off once they park and exit the vehicles with the key, making the cases cited by Nissan wholly inapplicable. *See Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *5 (E.D. Cal. Mar. 27, 2015) (finding that any alternative baby powder that the plaintiff "could have purchased would have the same alleged repercussions [(an increased risk of ovarian cancer)] if she had used the product in the same way"); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 n.9 (N.D. Cal. July 19, 2012) (emphasizing that plaintiff did not allege "that had defendant's juice been differently labeled, he would have purchased an alternative juice" and noting that alternative juices contained same lead and arsenic).

### 3. Plaintiffs also have standing to seek injunctive relief.

Nissan's argument that Plaintiffs cannot seek injunctive relief—simply because Plaintiffs do not allege that they intend to buy *the same dangerous, defective vehicles* again in the future—is unpersuasive.

Many California federal courts have concluded that plaintiffs have standing to seek injunctive relief even if they do not intend to purchase the same product again in the future. *See, e.g.*, *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) ("To do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar

any consumer who avoids the offending product from seeking injunctive relief."); *accord Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 46822, at *10 (N.D. Cal. Jan. 6, 2014) (plaintiffs had standing even though they did not allege they would purchase the products again); *Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at *4 (C.D. Cal. Aug. 16, 2013) ("While a consumer must have been injured to have standing to bring a claim under a consumer protection statute in the first instance, a lead plaintiff need not allege that he will willingly subject himself to future misconduct, or that he will be fooled by false advertising he now knows to be false, in order to seek injunctive relief on behalf of a class."); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012) (plaintiffs had standing even though they would not purchase the products again); *Cabral v. Supple, LLC*, 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012) (same); *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (same); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *2-3 (C.D. Cal. Apr. 11, 2011) (same).

Here, Plaintiffs had standing at the time of their purchase or lease. Plaintiffs also allege that they faced and continue to face a realistic threat of future harm from carbon monoxide poisoning as a result of the engine continuing to run after they removed the Keyless Fob, particularly insofar as they continue to drive their vehicles. *See, e.g.*, ¶ 53. These allegations are sufficient at the pleading stage to find that Plaintiffs have the necessary standing to seek injunctive relief for the vehicles already owned or leased by Plaintiffs and class members.

There is a split of authority on whether Plaintiffs can seek injunctive relief for future vehicles within California federal courts, as Nissan concedes. *See* MTD at 13. Yet, the more persuasive approach is to conclude that Plaintiffs have standing to seek injunctive relief whether or not they would buy or lease the same vehicles again in the future. Nissan should not be able to so easily escape the potential for injunctive relief just because Plaintiffs are now aware of the deadly Defect after the fact. As the court so aptly explained in *Henderson*, while Plaintiffs may not purchase the same product

again in the future "because they are now aware of the true content of the products, to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws." *See* 2011 WL 1362188, at *8. The *Henderson* court stressed that Plaintiffs, "as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers" from the defendant's wrongful conduct. *See id.*

Moreover, at least one court has acknowledged that even assuming there was a requirement that Plaintiffs allege that they intend to purchase the same defective product again in order to seek injunctive relief, so long as there is no allegation that the product is entirely worthless, the court may conclude that Plaintiffs "very well might purchase [the same product] in the future." *Adams v. Target Corp.*, 2014 U.S. Dist. LEXIS 151154, at *11 (C.D. Cal. Mar. 3, 2014). Here, Plaintiffs do not allege that their vehicles are entirely worthless.

## C. The Court Should Reject Nissan's Preemption and Primary Jurisdiction Arguments

Nissan makes a throw-away argument in *two sentences* that Plaintiffs' request for injunctive relief is barred by preemption and primary jurisdiction. Nissan's attempt to incorporate by reference Toyota's brief on this issue is improper and should be rejected. Nissan did not request from Plaintiffs or the Court leave to exceed the 25-page briefing limit, but it now skirts the page limits by attempting to annex six additional pages of arguments on preemption from Toyota's brief. The Ninth Circuit has expressly rejected this tactic. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343, 345 (9th Cir. 1996); *see also Barnes v. Sea Haw. Rafting, LLC*, 2015 WL 9459893, at *2 n.4 (D. Haw. Dec. 22, 2015); *United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1123 n.53 (C.D. Cal. 1998), *aff'd*, 209 F.3d 1095 (9th Cir. 2000).

In any event, California federal court decisions, that Nissan does not cite, have consistently refused to dismiss requests for injunctive relief in vehicle defect class actions and have declined to apply primary jurisdiction. *See Unintended Acceleration*

*MDL*, 754 F. Supp. 2d at 1198-1200 (concluding that "a real and substantial possibility of conflict is insufficient to warrant dismissal on preemption grounds," and that claims did not warrant application of primary jurisdiction); *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *9 (C.D. Cal. May 4, 2009) (same).

**D. Plaintiffs' Claims for Breach of the Implied Warranty Should Be Allowed to Proceed**

**1. New York law does not require privity for "things of danger."**

New York recognizes an exception to its general rule requiring privity for implied warranty claims when the product at issue is a "thing[] of danger." *See Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432 (N.Y. 1963). "[W]here an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." *Id.* at 436-37. For example, in *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011), the court applied New York law to hold that the plaintiffs had pled sufficient facts that the vehicles were dangerous because the vehicles could suddenly lose the ability to speed/accelerate, and therefore, there was no requirement of privity. The court in *Hubbard v. GMC*, 1996 WL 274018 (S.D.N.Y. May 22, 1996), came to the same conclusion where the plaintiffs alleged a defective braking system, finding that privity was not required for the implied warranty claim.

Here, because the FAC alleges that lack of Auto-Off in the Affected Vehicles presents deadly risks of carbon monoxide poisoning, as evidenced by at least fourteen deaths and many more severe injuries in just the past two years alone, the Court should conclude that privity is not required for the implied warranty claim. The

Affected Vehicles qualify as "things of danger," and the general rule requiring privity is inapplicable to the instant case. *See Goldberg*, 12 N.Y.2d at 436-37.[9]

### 2. Plaintiffs' vehicles are not merchantable because they each suffer from a deadly safety Defect.

Under New York law, "[a] product must be 'fit for the ordinary purposes for which such goods are used' to be considered merchantable under New York's version of the Uniform Commercial Code." *Derienzo v. Trek Bicycle Corp.*, 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005). As a result, "liability for breach of warranty depends on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Id.* Similarly, "Colorado … imposes an implied warranty of merchantability, effectively a guarantee that a product is fit for the ordinary purposes for which it is used." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 989 (C.D. Cal. 2015). At least one court within this district has explained that a vehicle is not necessarily fit for its ordinary purposes "merely because [it] provides transportation from point A to point B." *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 946 (C.D. Cal. 2012).

The question of whether a vehicle is fit for its ordinary purposes is necessarily a factual determination inappropriate for this stage of the litigation. Because the Court "must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party," *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, 950 (N.D. Cal. 2014), it is premature to dismiss plaintiffs' implied warranty claims. Plaintiffs allege that the Affected Vehicles present deadly risks of carbon monoxide poisoning without Auto-Off, and any determination as to whether vehicles with a life-threatening defect violate the implied warranty must be left to a trier of fact. For this reason, Nissan's argument that the Defect cannot cause harm "in the absence of human error" is premature, MTD at 17, particularly because Plaintiffs

---

[9] Because privity is not required here, Plaintiffs need not allege that the dealerships where they purchased or leased their vehicles are Nissan's agents for purposes of any privity analysis. *See* MTD at 16.

here allege that Nissan failed to undertake proper human factors analyses necessary to understand the hazards associated with Keyless Fobs.  ¶ 13.

### E.   Plaintiffs Adequately Allege That Nissan Omitted Material Facts and Breached Its Duty to Disclose a Safety Defect

In a non-disclosure case like this one, the plaintiff can state a claim under California law when the defendant has a duty to disclose an alleged defect.  *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007).[10]  A manufacturer generally has a duty to disclose a safety defect.  *See Daugherty v. Am. Honda Motor Co*., 144 Cal. App. 4th 824, 836 (2006); *see also Keegan*, 838 F. Supp. 2d at 941.  Moreover, a duty to disclose arises in any of the following circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact[s]." *Falk*, 496 F. Supp. 2d at 1095.  As Nissan observes, the law is substantially similar in Colorado, Florida, and New York.  MTD at 20.[11]  Here, Plaintiffs allege that the Defect poses a deadly safety hazard, that Nissan had exclusive/superior knowledge of the Defect, and that the Defect was unknown to Plaintiffs when they purchased or leased the Affected Vehicles.

#### 1.   Nissan has a duty to disclose the Defect because it poses an unreasonable safety risk.

"[T]he Ninth Circuit has recognized that California law imposes on

---

[10]  Plaintiffs assert claims based on Nissan's actionable failure to disclose a material safety defect, rather than affirmative misrepresentations.

[11]  *Cf. State v. Gen. Motors Corp.*, 466 N.Y.S.2d 124, 127 (N.Y. Sup. Ct. 1983) (finding GM had duty to disclose defect:  "If one party has superior knowledge or has a means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud."); *Ramel v. Chasebrook Constr. Co.*, 135 So. 2d 876, 882 (Fla. Dist. Ct. App. 1961) ("nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact"); *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991) ("Generally, a person has a duty to disclose to another with whom he deals facts that in equity or good conscience should be disclosed.").

1  manufacturers a general duty to disclose defects in their products relating to safety

2  issues." *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014).  In

3  particular, Defendants are "under a duty to disclose a known defect in a consumer

4  product when there are safety concerns associated with the product's use."  *Keegan*,

5  838 F. Supp. 2d at 941; *see also Kearney v. Hyundai Motor Am.*, 2010 WL 8251077,

6  at *6-7 (C.D. Cal. Dec. 17, 2010); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d

7  908, 916 (C.D. Cal. 2010); *Falk*, 496 F. Supp. 2d at 1094.  That is, where a plaintiff

8  alleges a safety defect, he or she sufficiently pleads a duty to disclose for purposes of

9  California's consumer protection statutes.  *See Asghari v. Volkswagen Grp. of Am.,*

10 *Inc.*, 42 F. Supp. 3d 1306, 1330-31 (C.D. Cal. 2013); *see also Keegan*, 838 F. Supp. 2d

11 at 944; *Kearney*, 2010 WL 8251077, at *6-7; *Marsikian v. Mercedes Benz USA, LLC*,

12 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009).  Significantly, "the average

13 consumer would [] expect the manufacturer to guarantee against unreasonable safety

14 risks."  *Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *4 (C.D. Cal. Oct.

15 24, 2011); *see also Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *7 (C.D. Cal.

16 Nov. 8, 2013) (same).

17      In this case, Plaintiffs allege that Nissan failed to disclose a safety defect in the

18 design of its Keyless Fob system.  According to the FAC, Nissan adopted a Keyless

19 Fob system that lacks the adequate safeguard of an automatic engine shutoff to ensure

20 that the vehicle's engine does not continue to run unabated, emitting deadly carbon

21 monoxide.  ¶¶ 12-15.  The Affected Vehicles have a dangerous propensity to cause

22 carbon monoxide poisoning, creating an undue risk of injury and death.  ¶ 147.  The

23 Defect exists because, without Auto-Off, the Affected Vehicle can emit dangerous (if

24 not deadly) levels of carbon monoxide.  ¶ 160.  Affected Vehicles allow colorless and

25 odorless carbon monoxide—the silent killer—to be emitted continually and unabated

26 after the car is parked and the driver exits the vehicle.  ¶ 28.  Those continuous

27 noxious carbon monoxide emissions accumulate, especially in enclosed environments,

28

and are dangerous to human health and potentially fatal.  *Id.*[12]  Since Nissan has "a

duty to disclose facts concerning safety issues" (*Kearney*, 2010 WL 8251077, at *6),

and since the alleged safety issues are certainly material to a reasonable consumer,

Plaintiffs sufficiently plead that Nissan had a duty to disclose the Defect under the

consumer protection statutes at issue.

Plaintiffs also allege that reasonable consumers like themselves would assume

or expect that the Keyless Fob would turn off the Affected Vehicles after removing the

Fob for a sufficient distance or period.  ¶¶ 3-6, 12-15.  According to the Complaint,

Nissan eliminated the physical and psychological connection between the Keyless Fob

and Affected Vehicles.  *Id*.  Considering human factors analyses, reasonable

consumers do not fully appreciate that the Keyless Fob plays no role in turning off the

engine regardless of the distance or time for which the Fob is removed from the

vehicle.  ¶¶ 13-16.  Nissan ignored these human factors in designing its Keyless Fob

system for the Affected Vehicles.  ¶¶ 154-59.

Plaintiffs further allege that they were not aware at the time that they purchased

the Affected Vehicles that the vehicles lacked Auto-Off and consequently posed a

severe safety risk.  ¶¶ 41, 47, 51, 57, 63, 67, 72, 78, 82, 87, 93, 97, 102, 108, 112, 117,

123, 127.  Had Plaintiffs known of the lack of Auto-Off and associated safety

concerns, they would not have purchased the Affected Vehicles or paid as much for

them.  ¶¶ 36, 54, 69, 84, 99, 114, 129.  It follows that the alleged safety defect was

material to their purchasing decisions.  *See Falk*, 496 F. Supp. 2d at 1096 (plaintiffs

adequately alleged that reasonable consumers would view defective speedometer as

material; had they known of it, they would not have paid full price); *see also*

*Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *13 (C.D. Cal. Oct. 3,

2014) ("[A] known safety hazard in a vehicle is a material fact that the manufacturer is

---

[12]  As discussed above, some 19 people have died in the last several years (14
described in the FAC), and many more have been seriously injured, due to carbon
monoxide poisoning from Keyless Fob vehicles.  *See* ¶ 163.

obligated to disclose."); *Kearney*, 2010 WL 8251077, at *7.  At bottom, Plaintiffs

allege a material safety defect that triggers a duty to disclose.

### 2. Nissan has a duty to disclose the Defect based on its exclusive or superior knowledge of the Defect and related safety risks.

A defendant is obligated to disclose information when it has exclusive

knowledge of material facts not known to the plaintiffs, namely, when the defendant is

in a superior position to know of the relevant facts.  *See, e.g.*, *Falk*, 496 F. Supp. 2d at

1094-95; *see also Marsikian*, 2009 WL 8379784, at *6.  The "exclusive knowledge"

standard is not construed literally or rigidly.  *See Johnson v. Harley-Davidson Motor

Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012).  Rather, exclusivity is analyzed

in part by examining whether the defendant had "superior" knowledge.[13]  And the

district courts in *In re MyFord Touch Consumer Litigation*, *Elias v. Hewlett-Packard

Co.*, *Falk*, and *Marsikian* all have said the same.[14]

Here, Plaintiffs allege that Nissan has a duty to disclose the Defect based on its

exclusive knowledge thereof.  ¶¶ 213-14, 240, 266-67.  In other words, Nissan is in a

superior position to know about the lack of Auto-Off and related safety concerns.

Nissan's knowledge arises at least through:  (1) certain news reports of injuries and

deaths from Keyless Fob vehicles that lack Auto-Off (¶¶ 164-68); (2) recalls of similar

Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 169-72); (3) patent

applications covering Auto-Off systems (¶¶ 173-78); (4) personal injury lawsuit filings

for Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 179-85); (5) consumer

complaints filed with NHTSA regarding Keyless Fob vehicles (¶¶ 186-87); (6) review

of non-binding NHTSA suggestions (¶¶ 188-92); and (7) Nissan's partial

---

[13]  *Id.* ("Since Defendant was in a ***superior position*** to know of its defective engines, Plaintiffs properly allege that Defendant had exclusive knowledge of material facts not known to Plaintiffs.") (emphasis added).

[14]  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 960; *Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014); *Falk*, 496 F. Supp. 2d at 1096-97; *Marsikian*, 2009 WL 8379784, at *6.

implementation of Auto-Off in remote-start applications (¶¶ 193-200, 205-11).[15]

Nissan contends that reasonable consumers already know that car fumes are dangerous in an enclosed space and that drivers should turn off their cars without leaving them unattended.  MTD at 21.  But this misses the point.  Prospective purchasers do not know that the Keyless Fob systems of these vehicles lack Auto-Off or that such a design poses an increased risk of carbon monoxide poisoning above and beyond the risk posed by other cars.  In this regard, the Affected Vehicles are *more* dangerous than other cars.  As detailed in the Complaint, the human factors analyses and real life interactions with Keyless Fobs confirm that many of the Affected Vehicles inevitably and inadvertently will be left running in enclosed spaces.[16]

Nissan also intimates that the owners' manuals disclose the material risks associated with the lack of Auto-Off.  MTD at 21.  This line of reasoning goes astray for three main reasons.  *First*, Nissan did not submit a Request for Judicial Notice and Nissan provides no grounds for considering the owners' manuals on a motion to dismiss.  *Second*, the cited owners' manuals are not relied on in the operative FAC and they are not the proper subject of judicial notice.[17]  *Third*, the owners' manuals are not pre-sale marketing materials; an objectively reasonable consumer would not review an

---

[15] Since at least late 2012, Nissan had knowledge of the need for Auto-Off, and worked on auto-off technology internally with remote-start vehicles in order to limit carbon monoxide emissions in pre-start situations, but Nissan opted not to implement Auto-Off in its Keyless Fob systems for the Affected Vehicles.  ¶¶ 208-11.

[16] Nissan concedes that consumers expect the Affected Vehicles to *start* only while the Fobs are in the cars.  MTD at 21.  Similarly, human factors analyses reflect that consumers expect the Affected Vehicles to *run* only while the Fobs are in the cars—meaning that the cars should stop running soon after the Fob is removed.

[17] Nissan's argument that Plaintiffs have admitted "that they read the owners' manuals before their transactions" is wrong and a blatant mischaracterization.  *See* MTD at 6.  Nissan references Paragraph 1, Footnote 1 of the original complaint.  First, Nissan's reference to the original, superseded complaint is improper.  *See Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014) (refusing to consider facts cited from prior version of complaint that was subsequently amended).  More importantly, the footnote that Nissan improperly references states that Exhibit 1, which lists the Affected Vehicles, was compiled by an analysis of auto manuals and sales brochures.  The exhibit was obviously compiled by counsel in preparing the complaint.  Nowhere does the complaint allege that Plaintiffs received, reviewed, or relied on those manuals prior to purchasing or leasing their vehicles.

---

owners' manual prior to purchase.  *See Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387, at *2-3 (C.D. Cal. Aug. 31, 2011) (rejecting argument that product manuals disclosed the alleged defect, since the manuals were provided to consumers after they bought the products); *see also Asghari*, 42 F. Supp. 3d at 1328.

Furthermore, Nissan cites to *Taragan v. Nissan North America, Inc.*, 2013 WL 3157918 (N.D. Cal. June 20, 2013), for its determination that plaintiffs failed to allege a duty to disclose based on defendant's knowledge, or that defendant engaged in an unfair practice.  In *Taragan*, however, the plaintiff merely stated in a conclusory fashion that Nissan was in a superior position to know about the quality and nature of its vehicles, with no factual allegations to support it.  *Id.* at *7.  By contrast, Plaintiffs allege specific facts alerting Nissan that its Keyless Fob system design was, in fact, defective—as contemplated in *Taragan*.  Moreover, the *Taragan* complaint did not allege a duty to disclose based on a safety concern, and therefore, the district court emphasized that it could not consider whether Nissan had a duty to disclose the defect on the grounds that it involved a safety concern.  *See id.* at *8.  By contrast, Plaintiffs squarely allege a duty to disclose on grounds, among others, that the Defect poses a safety concern.

As Nissan notes, in *Taragan*, the alleged rollaway risk was characterized as being completely avoidable by placing a car in park as a matter of common sense and prudence.  *See id.* at *9.  But here, the carbon monoxide risks are *not* completely avoidable.  According to the Complaint, reasonable consumers are unaware that the Affected Vehicles lack Auto-Off, and they have been conditioned to associate removing a key with turning off the car's engine.  Moreover, drivers may press a Start/Stop button on a keyless system without the engine turning off as intended.

In any event, Nissan disputes that it even knew its Keyless Fob design posed a genuine safety risk as of the time of Plaintiffs' purchases.  Yet, Plaintiffs sufficiently plead otherwise based on multiple sources.  For example, there were at least six Nissan consumer complaints addressing the carbon monoxide danger posed by the

Defect, filed with NHTSA over the past seven years (beginning in May 2009).  ¶ 214. In December 2011, NHTSA published a Notice of Proposed Rulemaking addressing the dangers of Keyless Fobs, which outlined two incidents in which vehicle owners whose Keyless Fob cars were left with the engine running were lucky not to have been killed, and observed that "others, not as fortunate, may have died because of carbon monoxide poisoning from their vehicles."  ¶ 191.  Nissan also implemented Auto-Off in remote start cars beginning in late 2012.  ¶ 214.[18]

In short, Plaintiffs adequately plead that Nissan was in an exclusive or superior position to know about the nature of the Defect and the scope of the dangers surrounding it.  Consequently, Nissan had a duty to disclose the Defect.

### 3.      Plaintiffs amply allege that Nissan's omissions caused harm.

According to Nissan, the FAC does not plead facts that show causation of economic harm.  MTD at 24.  In reality, the FAC readily meets the causation requirement under California's consumer protection laws (and similar laws in other states).  Causation "may be established by *materiality*."  *Keegan*, 284 F.R.D. at 530 (emphasis added); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012); *In re Toyota*, 790 F. Supp. 2d at 1163.  An unreasonable *safety* defect is *material* to a reasonable person, and pleading such a defect satisfies the causation requirement.  *See In re Toyota*, 790 F. Supp. 2d at 1169; *see also Falk*, 496 F. Supp. 2d at 1096; *Herremans*, 2014 WL 5017843, at *13; *Kearney*, 2010 WL 8251077, at *7.  As Nissan's own authorities recognize, once Plaintiffs sufficiently

---

[18]  Further still, the FAC alleges on information and belief that Nissan had knowledge of the Magna Electronics Inc. patent application covering Auto-Off technology (published in 2009), since Automakers like Nissan have a responsibility to review government filings that pertain to automotive safety.  ¶¶ 177-78, 214. Incidentally, Nissan complains that Plaintiffs make allegations based on "information and belief" about Nissan's knowledge.  There is, however, nothing improper about such allegations.  *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1189 (explaining that allegations about corporation's knowledge may be made on information and belief where plaintiffs lack personal knowledge of underlying facts known to corporation, so long as pleadings include basis on which the belief is founded).

1    and plausibly plead a genuine safety defect, the economic harm logically flows from

2    it. *See In re Toyota*, 790 F. Supp. 2d at 1163.

3         True, "something more" may be required than "simply alleging an overpayment

4    for a defective product…." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1040 (N.D.

5    Cal. 2014).  That "something more" may be "sufficiently detailed, non-conclusory

6    allegations of the product defect."  *Id.*; *In re Toyota*, 790 F. Supp. 2d at 1163

7    ("Plaintiffs' allegations about the safety defect are neither conclusory nor

8    implausible.").  "As long as Plaintiffs do not simply allege that their [] vehicles are

9    "defective," but rather offer detailed, non-conclusory factual allegations of the product

10   defect, the economic loss injury flows from the plausibly alleged defect at the

11   pleadings stage."  *In re Toyota*, 790 F. Supp. 2d at 1166.  In *Opperman*, for example,

12   the court found that "[p]laintiffs' allegations concerning the offending feature of the

13   product—design that enables third parties to take address book information without

14   consent—supply the 'something more' that is required."  *See* 87 F. Supp. 3d at 1040.

15        In this case, Plaintiffs do not simply allege that the Affected Vehicles are

16   "defective."  Instead, Plaintiffs set forth detailed, specific factual allegations about

17   Nissan's Keyless Fob system without Auto-Off, the increased costs of the system, the

18   nature of the unreasonable safety risks posed by Nissan's design that lacks an

19   automatic shutoff mechanism (above and beyond vehicles with traditional keys and

20   other designs), and the actual and threatened harms resulting from the lack of Auto-

21   Off in such a system.  Furthermore, each Plaintiff alleges that he or she experienced

22   actual manifestations of the Defect firsthand (the engine continued to run after

23   Plaintiff parked and exited the vehicle with the Keyless Fob)—and while Plaintiffs do

24   not claim personal injuries, they do allege that they were concerned about using their

25   vehicles following these experiences.  *See In re Toyota*, 790 F. Supp. 2d at 1166.[19]  At

26

27   _____

28       [19]  In *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014), relied on by Nissan, the plaintiffs did not provide detailed non-conclusory allegations about a defect.  Neither did the plaintiffs allege that they experienced any

the pleading stage, these allegations sufficiently and plausibly establish that economic harm flows from the Defect.

Finally, "[w]hether an omission is material is a fact-intensive question…." *Keegan*, 284 F.R.D. at 531. "[T]he materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided at the motion to dismiss stage." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). To be sure, Plaintiffs sufficiently allege a safety defect, which would be material to a reasonable consumer and thus cause economic harm. But if materiality of the Defect were an issue at all, it would be an issue of fact that should not be decided at the motion to dismiss stage.

## F.    Plaintiffs Properly Plead Unjust Enrichment and Other Equitable Claims

The Ninth Circuit recently held that a claim for unjust enrichment under California law should not be dismissed just because it is not a "standalone cause of action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The court's "unambiguous" decision in *Astiana* has "settled the long-standing question of whether a court may dismiss a claim for unjust enrichment as merely duplicative of other statutory or tort claims." *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1049 (N.D. Cal. 2015); *cf. Philips v. Ford Motor Co.*, 2015 WL 4111448 (N.D. Cal. July 7, 2015) (decided before *Astiana*); *Durkee v. Ford Motor Co.*, 2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) (same). More broadly, at the pleading stage, "there is no question that Plaintiff[s] can pursue [equitable] claim[s] as an alternative to legal remedies…, should those legal remedies be unavailing." *Cabrales v. Castle & Cooke Mortg., LLC*, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015).[20]

Similarly, federal courts applying Colorado, Florida, and New York law have held that a plaintiff can plead unjust enrichment in the alternative to other causes of action, even though the damages may be "mutually exclusive." *See Clyne v. Walters*,

problems with the vehicles. Nor did they plead any other facts demonstrating that economic harm would occur.

[20] At any rate, a purely economic recovery does not wholly protect Plaintiffs and class members from future safety issues arising from the Defect.

1   2009 WL 2982842, at *3 (D. Colo. Sep. 16, 2009) (denying motion to dismiss unjust

2   enrichment claim because "party is permitted to plead logically inconsistent claims as

3   alternatives"); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000) (parties

4   permitted to plead unjust enrichment in alternative) (citing *ThunderWave, Inc. v.*

5   *Carnival Corp.*, 954 F. Supp. 1562 (S.D. Fla. 1997)); *JTH Tax, Inc. v. Gouneh*, 721 F.

6   Supp. 2d 132, 139-40 (N.D.N.Y. 2010) (allowing unjust enrichment claim to survive

7   motion to dismiss despite similar breach of contract claim).

8        Thus, Plaintiffs' adequately assert claims for equitable relief, including unjust

9   enrichment.

10                          **IV.   CONCLUSION**

11        For the reasons above, the Court should deny Nissan's motion to dismiss.

12

13   Dated:  April 18, 2016                HAGENS BERMAN SOBOL SHAPIRO LLP

14                                         By */s/ Steve W. Berman*

15                                         Steve W. Berman (*pro hac vice*)
                                           HAGENS BERMAN SOBOL SHAPIRO LLP
16                                         1918 Eighth Avenue, Suite 3300
                                           Seattle, WA 98101
17                                         Telephone: (206) 623-7292
                                           Facsimile: (206) 623-0594
18                                         steve@hbsslaw.com

19                                         Lee M. Gordon (SBN 174168)
                                           Elaine T. Byszewski (SBN 222304)
20                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                           301 N. Lake Avenue, Suite 203
21                                         Pasadena, CA 91101
                                           Telephone: (213) 330-7150
22                                         Facsimile: (213) 330-7152
                                           lee@hbsslaw.com
23                                         elaine@hbsslaw.com

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LABATON SUCHAROW LLP

Martis Ann Alex (SBN 77903)
Daniel R. Leathers (*pro hac vice*)
Brian R. Morrison (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
malex@labaton.com
dleathers@labaton.com
bmorrison@labaton.com

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2016, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Steve W. Berman*
STEVE W. BERMAN