STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

MARTIS ANN ALEX (SBN 77903)
malex@labaton.com
DANIEL R. LEATHERS (*pro hac vice*)
dleathers@labaton.com
BRIAN R. MORRISON (*pro hac vice*)
bmorrison@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| PATRICIA LASSEN, *et al.*,<br><br>      Plaintiffs,<br><br>  vs.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>      Defendant. | **Case No.: 2:15-cv-06491-AB-MRW**<br><br>**JOINT RULE 26(F) REPORT**<br><br>Assigned to the Hon. Andre Birotte Jr.<br><br>Scheduling Conference: June 27, 2016<br>Time: 10:00 a.m.<br><br>First Amended Complaint Filed<br>November 25, 2015 |

010541-20 879428 V1

Pursuant to Fed. R. Civ. P. 26(f), Local Rule 26-1, this Court's Order Setting Scheduling Conference (Dkt. No. 84 in Case No. 2:15-cv-06491), and this Court's Order Granting Stipulation to Set Global Briefing and Hearing Schedule for Defendants' Motions to Dismiss (Dkt. No. 120 in Case No. 2:15-cv-06491), Plaintiffs[1] and Defendants[2] (collectively, the "Parties") have conferred through their respective counsel. Plaintiffs and Defendant Nissan North America, Inc. respectfully submit this Joint Rule 26(f) Report.

## A.     Statement of the Case

### 1.     Plaintiffs' Statement

Defendants failed adequately to disclose a deadly safety defect in, and a hazard from, their vehicles equipped with Keyless Fob ignition systems. Those vehicles lack an automatic engine shut-off mechanism to stop the engine from continuing to run when a driver parks the car and exits with the Keyless Fob in hand ("Auto-Off"), resulting in the continuous emission of deadly carbon monoxide (the "defect"). As a result of their failure adequately to disclose the lack of Auto-Off, Plaintiffs contend that Defendants are liable for violations of numerous state law consumer protection and deceptive practices statutes and common law fraud. Plaintiffs also allege that, because the vehicles suffer from a deadly safety defect, Defendants breached the implied warranty of merchantability. Plaintiffs further allege that Defendants have been unjustly enriched by virtue of Plaintiffs' overpayment for the affected vehicles without knowledge of the defect.

This deadly safety defect has resulted in at least fourteen documented, preventable deaths and many more life-threatening injuries from carbon monoxide

---

[1] The "Plaintiffs" in these five related actions include: Bernice Wimley, Oscar De Leon, Mark Pastarnack, Jason Shapiro, Andrew Freitas, Daniel Chesler, Janine Lovuolo, Patricia Lassen, Scott Goldstone, Jeffrey Sandler, Michelle Smith, Johana Garcia, Robert Farber, Richard Draeger, Stanley & Janet Neill, Neil Stevens, Patricia Flannery, Helen Ciangiulli, Judith Harr Shane, and Steven Green.

[2] The "Defendants" in these five related actions include: FCA US LLC, Ford Motor Company, Hyundai Motor America, Inc., Kia Motors America, Inc., Nissan North America, Inc., and Toyota Motor Sales, U.S.A., Inc.

010541-11  874630 V2

poisoning as described in Plaintiffs' Complaints.  Nothing in the pre-sale marketing materials relied upon by Plaintiffs adequately disclosed the presence of this inherently dangerous safety hazard, nor did those materials disclose that vehicle engines could continue to run until the gas tank is empty even after the car is parked and the Keyless Fob is removed.

Plaintiffs and other consumers were not aware of the safety defect when they purchased or leased their vehicles, but at all relevant times, Defendants had exclusive or superior knowledge of the defect as described more fully in the Complaints. Additionally, defendants Toyota and Ford actively concealed the defect from consumers.  Moreover, each of the named Plaintiffs has personally experienced a manifestation of the defect.

Plaintiffs bring this lawsuit on behalf of themselves and other similarly situated consumers who purchased or leased affected vehicles in California, Colorado, Florida, Massachusetts, New Jersey, and New York.  Plaintiffs seek recovery of economic losses they have already suffered by overpaying for their vehicles and for diminished vehicle values.  Plaintiffs also seek injunctive relief in the form of vehicle repairs, class notifications, adequate disclosure of the defect and safety risks, and cessation of sales of vehicles affected by the defect.

**2.      Defendant's Statement**

**Nissan North America, Inc.**

Plaintiffs portray this matter as just another defective-vehicle case.  But Plaintiffs are not claiming their cars are "defective" or that they "experienced the Defect"; they do not mean a "defect" like an engine failure or transmission problem. For them, "defective" means "could be used in a way that causes injury," a statement true of virtually any product.  When they say they have "experienced the Defect," Plaintiff mean they "forgot to turn off their cars," not that they were injured or a part failed.

1    In Plaintiffs' first amended complaint against Nissan North America, Inc.

2  ("Nissan"), six plaintiffs from four states (California, Colorado, Florida, and New

3  York) claim their Nissan or Infiniti vehicles, designed with electronic keys or "keyless

4  fobs," are worth less than they previously thought because they now are concerned

5  they may forget to turn the vehicles off.  Plaintiffs' theory is that reasonable drivers

6  understand the keyless "Start/Stop Button" starts the vehicle, but at least some of them

7  do not understand they should push the same button to stop it.

8    Plaintiffs cannot bring design-defect claims because they have not been injured.

9  It is not entirely clear what Plaintiffs think should have been disclosed that was not.  In

10  fact, the relevant owners' manuals warn drivers to make sure a vehicle's engine is off

11  before getting out, to take their electronic keys with them, and to avoid running the

12  engine in enclosed spaces like a garage.  Plaintiffs admitted in their initial complaint

13  that they read the owners' manuals before their transactions.  Also, each plaintiff now

14  alleges he or she reviewed the company's website before the transaction; the owners'

15  manuals for their vehicles have been available online at all relevant times.  Nor is it

16  clear when Plaintiffs believe Nissan knew the material fact(s) it supposedly failed to

17  disclose.  Almost none of Plaintiffs' knowledge allegations pertain to Nissan itself;

18  most are facts concerning other manufacturers that Plaintiffs attribute to Nissan "on

19  information and belief."

20  **B.    Subject Matter Jurisdiction**

21    This Court has subject matter jurisdiction pursuant to the Class Action Fairness

22  Act, 28 U.S.C. § 1332(d).  This is a class action where some of the members of the

23  proposed classes are citizens of states different from Defendants' home states, the

24  aggregate claims exceed $5,000,000 (exclusive of interest and costs), and the proposed

25  classes are comprised of 100 members or greater.

26

27

28

010541-20 879428 V1

## C.     Legal Issues

### 1.     Plaintiffs' Legal Issues

The primary legal issue in this litigation is whether Defendants had a duty to disclose the asserted safety defect and safety risks to Plaintiffs and putative class members (and factually, whether Defendants did in fact adequately disclose the defect and risks in their pre-sale materials).  This core issue forms the basis of Plaintiffs' claims against Defendants.

Plaintiffs allege in the Complaints that Keyless Fobs pose a deadly safety risk giving rise to a duty to disclose.  Defendants had a duty to disclose the existence of the defect because it had exclusive (superior) knowledge of, and/or actively concealed, the defect.  Defendants were in a superior position to know about personal injury and wrongful death suits concerning carbon monoxide poisoning, patent applications, NHTSA complaints, and automakers' partial implementations of Auto-Off.  Defendants therefore had a duty to disclose the defect to Plaintiffs.

Plaintiffs also allege that Defendants did not adequately disclose the defect and safety risks to Plaintiffs in their pre-sale materials.  Plaintiffs were not made aware in any pre-sale marketing materials prior to purchasing or leasing the affected vehicles that those vehicles lacked Auto-Off, nor were Plaintiffs made aware of the dangerous safety risks associated with the lack of Auto-Off.  Defendants consequently breached their duty to disclose, and Plaintiffs and the putative class members are entitled to recover economic damages and to seek injunctive relief.

Further, Plaintiffs allege that, because the vehicles suffer from a deadly safety defect, Defendants breached the implied warranty of merchantability.  By failing to install Auto-Off, Defendants created a dangerous safety risk for millions of consumers who have come to expect that the vehicles will turn off so long as they park the car and remove the Keyless Fob.

Although Defendants raise a variety of legal issues in their Motions to Dismiss (and again here in this Report), Plaintiffs believe that those issues are without merit for

the reasons already fully described in Plaintiffs' Briefs in Opposition to the Motions. Plaintiffs' Complaints contain sufficient facts to render each of the claims plausible on their face.

While additional legal issues will likely arise in determining class certification, expert qualification, the scope of damages and injunctive relief, and other issues common to complex class action litigation, Plaintiffs do not anticipate any unusual substantive, procedural, or evidentiary issues at this time.  Plaintiffs also expect that many of the legal and factual issues presented here will be common among the five related cases pending before this Court.

### 2.     Defendant's Legal Issues

### Nissan North America, Inc.

As more fully set forth in Nissan's pending motion to dismiss, plaintiffs' claims should be dismissed for at least five reasons.

First, Plaintiffs fail to plead Article III standing because their alleged injury is not actual, imminent, or fairly traceable to Nissan.  Plaintiffs do not allege physical injury, and their claim of current economic injury is based entirely on an alleged "concern" about possible *future* physical injuries that in fact are extremely unlikely. Plaintiffs also lack standing to seek injunctive relief; because they do not allege a future intent to buy the products in question, an injunction would not redress their claimed injury.

Second, Plaintiffs' injunctive-relief claims fail because they conflict with NHTSA's regulatory authority and its primary jurisdiction over vehicle-safety issues.

Third, only the Colorado and New York plaintiffs now assert warranty-of-merchantability claims.  Those fail for lack of privity and because Plaintiffs do not allege their cars have ever been unfit for ordinary use.

Fourth, Plaintiffs' fraudulent-concealment claims (statutory or common-law) all fail.  Importantly, these claims are not based on representations but on omissions: Plaintiffs allege only that Nissan failed to disclose their vehicles will not turn

JOINT RULE 26(f) REPORT

themselves off automatically.  The claims fail because Plaintiffs do not adequately allege Nissan knowingly failed to disclose facts material to reasonable consumers, and because they allege no injury—physical or economic—caused by concealment.

Finally, Plaintiffs' claims for injunctive or other equitable relief fail for the reasons above and because Plaintiffs have an adequate remedy at law.

In the event the case survives the pleading stage, additional legal issues are likely to arise in a potential summary judgment motion and in opposition to class certification.  This action is replete with individualized issues such as reliance, ascertainable loss-causation, pre-existing knowledge of the risk or alleged defect, and challenges in calculating any classwide diminution-in-value theory.

## D.     Parties, Witnesses and Documents

### 1.     Plaintiffs

Plaintiff identifies the following witnesses:

a)   Plaintiff Bernice Wimley.

b)   Plaintiff Oscar De Leon.

c)   Plaintiff Mark Pastarnack.

d)   Plaintiff Jason Shapiro.

e)   Plaintiff Andrew Freitas.

f)   Plaintiff Daniel Chesler.

g)   Plaintiff Janine Lovuolo.

h)   Plaintiff Patricia Lassen.

i)   Plaintiff Scott Goldstone.

j)   Plaintiff Jeffrey Sandler,

k)   Plaintiff Michelle Smith.

l)   Plaintiff Johana Garcia.

m)   Plaintiff Robert Farber.

n)   Plaintiff Richard Draeger.

o)   Plaintiffs Stanley & Janet Neill.

-6-
JOINT RULE 26(f) REPORT

p)   Plaintiff Neil Stevens.

q)   Plaintiff Patricia Flannery.

r)   Plaintiff Helen Ciangiulli.

s)   Plaintiff Judith Harr Shane.

t)   Plaintiff Steven Green.

u)   Members of the proposed Class.

v)   Defendant Nissan North America, Inc.'s current and former officers, directors, managers, supervisors, custodians, and technicians.

w)   Defendant Ford Motor Company's current and former officers, directors, managers, supervisors, custodians, and technicians.

x)   Defendant Hyundai Motor America, Inc.'s current and former officers, directors, managers, supervisors, custodians, and technicians.

y)   Defendant Kia Motors America, Inc.'s current and former officers, directors, managers, supervisors, custodians, and technicians.

z)   Defendant Toyota Motor Sales, U.S.A., Inc.'s current and former officers, directors, managers, supervisors, custodians, and technicians.

aa)  Defendant FCA US LLC's current and former officers, directors, managers, supervisors, custodians, and technicians.

bb)  Third parties involved in personal injury actions, NHTSA complaints, and/or consumer complaints made to Defendants arising from keyless fob Affected Vehicles.

To support their claims, Plaintiffs anticipate using documents concerning the subjects described in *Section J2* below.

**2.     Defendants**

**Nissan North America, Inc.**

Defendant Nissan North America Inc. states that Nissan Motor Co., Ltd. is its parent company and no publicly traded company other than Nissan Motor Co., Ltd. directly owns more than 10% of Nissan North America Inc.'s stock.

Nissan believes Plaintiffs' claims should be dismissed.  However, in the event the case is permitted to proceed on some level, Nissan will take the depositions of Plaintiffs.  Nissan may need to take third-party discovery (e.g., relating to the dealerships where the subject vehicles were purchased or leased) depending on the

-7-

010541-20 879428 V1

results of the discovery from Plaintiffs.  Nissan will take expert discovery related to class certification and merits issues.

Nissan has agreed to meet and confer with Plaintiffs on a process for identifying particular custodians for document collection.  In addition, Nissan identifies the following documents relating to the issues in this case:

1.     Owner's manuals for the subject vehicles.

2.     Product brochures for the subject vehicles.

3.     Warranty booklets for the subject vehicles.

4.     Warranty and maintenance histories.

5.     Warranty and consumer affairs data, to the extent any exists, pertaining to the key fobs in the subject vehicles.

6.     Design files relating to the alleged key fob defect in the subject vehicles.

Plaintiffs' inclusion of "current *and former*" officers, directors, managers, supervisors, custodians, and technicians is unreasonably burdensome, harassing, and not proportional to the claims at issue against Nissan.  Plaintiffs reference to unnamed "third parties" "involved in" personal injury actions, NHTSA complaints, and other activities is impermissibly vague.  Nissan intends to further meet and confer with plaintiffs on these issues.

## E.     Damages

Plaintiffs allege that they and other putative class members are entitled to recover: (1) the diminution in value for each Affected Vehicle and/or the premium overcharge for each of their defective Keyless Fob systems; (2) punitive damages; (3) attorneys' fees and costs; (4) pre-judgment and post-judgment interest on monetary damages; and (5) all other relief to which Plaintiffs may be entitled at law or in equity.

Damages or restitution may be measured by various methods, such as: (1) the difference between the market value of an Affected Vehicle with the defect versus without it; or (2) the amount overcharged for the defective Keyless Fob system on Affected Vehicles.  Plaintiffs maintain that the damages or restitution owed in each

case from each Defendant substantially exceeds $5,000,000, excluding attorneys' fees, costs, and punitive damages.

Plaintiffs expect to prepare an expert report regarding damages and/or restitution in accordance with the deadlines proposed herein.  Plaintiffs have not computed the amount of their damages or restitution at this early stage, due to, among other things, the need to perform an expert analysis concerning the overcharge or diminution in value, and a lack of information in Defendants' possession to be obtained through discovery.

Nissan denies all liability.

**F.    Insurance**

Plaintiffs:  N/A

Defendants represent that they have no applicable insurance coverage.

**G.    Motions**

At present, the Parties do not anticipate filing a motion to add parties, amend the operative complaints, or transfer venue.

### Class Certification

Plaintiffs intend to file a Motion for Class Certification after they have had an adequate opportunity to conduct discovery.  The parties propose the following class certification briefing schedule:

1.    Certification Motion shall be filed nine (9) months after the Court's ruling on the pending motions to dismiss, including any expert opinions offered in support of 'Plaintiffs' Certification Motion. Plaintiffs will produce for deposition any expert(s) identified in support of their Certification Motion within four (4) weeks of filing it.

2.    Opposition papers shall be filed eight (8) weeks after Plaintiffs file their Certification Motion, including any expert opinions offered in opposition to certification.  Defendant will produce for deposition any opposing expert(s) within four (4) weeks of filing its Opposition.

3.      Reply papers shall be filed eight (8) weeks after Defendant files its Opposition to Plaintiffs' Certification Motion.  Only expert rebuttal opinions may be offered in reply.[3]

## H.    Manual for Complex Litigation

The Parties agree that the Manual for Complex Litigation is instructive and that it may assist the Parties in efficiently litigating these complex consolidated actions, but the Parties do not believe that it is necessary to adopt any specific provisions at this time.

## I.    Status of Discovery

Pursuant to this Court's Order Granting Stipulation to Set Global Briefing and Hearing Schedule for Defendants' Motions to Dismiss, no party shall serve discovery prior to the initial scheduling conference on June 27, 2016, and therefore no discovery has been served as of the filing of this Joint Report.

The Parties agree to work in good faith to coordinate and respond to discovery in a timely fashion in accordance with the Federal Rules of Civil Procedure.

## J.    Discovery Plan

### 1.    Timing of Rule 26(a)(1) Disclosures

The Parties jointly propose that the disclosures required by Rule 26(a) be exchanged 14 days after the Court issues its ruling on Defendants' pending motions to dismiss and/or strike, and that discovery generally commence at that time.

In addition, Plaintiffs request the Court's scheduling order provide that: (i) the Parties shall commence producing responsive documents within sixty (60) days of receiving requests for production of documents, and (ii) the Parties shall finish producing responsive documents as soon as practicable after production commences. Plaintiffs believe that it is important to have a date certain for the commencement of document production to ensure its timely completion and avoid unnecessary motions

---

[3] The parties disagree on whether experts tendering rebuttal opinions should be tendered for deposition and will continue to meet and confer on this issue and may, at the appropriate time, seek guidance from this Court.

010541-20 879428 V1

to compel production. Moreover, based on past litigation experience, Plaintiffs believe that the Parties should commit to completing document productions in a prompt and timely fashion in order to ensure adequate time to review documents, take depositions, and otherwise prepare for class certification.

**Nissan North America, Inc.**

Nissan cannot agree to commence producing responsive documents within 60 days of receiving any document requests.  Nissan agrees that the parties should work in good faith to coordinate and respond to discovery in a timely fashion in accordance of the Federal Rules of Civil Procedure, but a hard production start date when Nissan has not had the opportunity to analyze the scope of the requests and make objections to them is inappropriate.

**2.      The Subjects on Which Discovery May Be Needed, When Discovery Should Be Completed, and Whether Discovery Should Be Conducted in Phases or Be Limited or Focused on Particular Issues**

Plaintiffs intend to seek discovery concerning at least the following subjects:

- Defendants' assessment of the asserted Defect in the Keyless Fob ignition systems of Affected Vehicles, including any assessment of Auto-Off technology (or lack thereof) or carbon monoxide safety risks;

- Defendants' research and development, design and design changes, engineering, material composition, manufacturing and manufacturing changes, modeling, quality control and installation of the Keyless Fob ignition systems of Affected Vehicles or Auto-Off technology (or lack thereof);

- Defendants' marketing and advertising materials concerning the Affected Vehicles;

- Defendants' warnings and disclosures relating to the asserted Defect or associated safety risks;

- Defendants' communications with NHTSA concerning the asserted Defect in the Keyless Fob ignition systems of Affected Vehicles, including any assessment of Auto-Off technology (or lack thereof) or carbon monoxide safety risks;

- Defendants' considerations about potential recalls and decisions not to recall the Affected Vehicles to address carbon monoxide safety risks or the lack of Auto-Off;

- Defendants implementation of Auto-Off on remote-start vehicles and other vehicle models;

-11-

JOINT RULE 26(f) REPORT

- The pricing, cost, value, and sales of the Affected Vehicles and Keyless Fob features, including MSRPs, original sales pricing and volume, lease pricing and volume, residual values, Keyless Fob ignition system costs and add-on package pricing and premiums;

- The feasibility and costs of implementing Auto-Off technology;

- The number and identification of purchasers and lessees of Affected Vehicles;

- Defendants' contacts with the State of California and other states;

- Defendants' assessments, analyses, tests, test results, studies, surveys, simulations, investigations, failure analyses, knowledge, inquiries or evaluations that relate to the Keyless Fob ignition systems of Affected Vehicles, the asserted Defect or lack of Auto-off, incidents in which Affected Vehicles continued to run after drivers parked and exited the vehicles, or safety risks of carbon monoxide poisoning associated with the Affected Vehicles, including:

  o The design, manufacture, and functioning of the Keyless Fob ignition systems of the Affected Vehicles;

  o The mechanisms for shutting down the engines of the Affected Vehicles;

  o Complaints about the asserted Defect or failure of the Affected Vehicles to shut off after removal of the Keyless Fobs (such as consumer complaints);

  o Field reports and dealer reports (such as reported carbon monoxide incidents associated with the Affected Vehicles);

  o Warranties for the Affected Vehicles;

  o Claims and lawsuits concerning carbon monoxide poisoning and any related risk of harm raised in connection with the Affected Vehicles;

  o Defendants' responses to complaints about the asserted Defect or failure of the Affected Vehicles to shut off after removal of the Keyless Fobs; and

  o Communications with dealers or government entities concerning the asserted Defect or the fact that the Affected Vehicles do not shut-off automatically after removal of the Keyless Fobs (including technical bulletins, advisories, training materials, other informational documents, and correspondence relating to any government inquiries or investigations).

- The facts relating to the Legal Issues identified in Section C above.

Plaintiffs also anticipate that third-party discovery may be required on one or more of the subjects described above.

-12-
JOINT RULE 26(f) REPORT

While the Parties agree that discovery should not be bifurcated or phased, they also agree that priority should be given to discovery on class issues, and the Parties intend to work together to meet this goal. The Parties further agree to work in good faith to schedule depositions at mutually convenient times and places.

**Nissan North America, Inc.**

Nissan believes Plaintiffs' claims should be dismissed. However, in the event the case is permitted to proceed on some level, Nissan will propound written discovery to Plaintiffs and take their depositions. The documents requested from Plaintiffs are likely to include the vehicle sales contract, and any correspondence with Nissan, the Better Business Bureau, or dealers. Nissan may need to take third-party discovery depending on the results of the discovery from Plaintiffs. Nissan will take expert discovery related to class certification and merits issues.

A number of Plaintiffs' requested topics are vague, premature, and burdensome, therefore making the requests disproportional. Several topics are also overbroad to the extent they seek documents that are subject to the attorney-client privilege and/or attorney work product doctrine, such as the request for Nissan's "considerations" about potential recalls and decisions not to recall the subject vehicles.

**3.      Disclosure and Discovery of Electronically Stored Information ("ESI").**

**a.      ESI Protocol**

On June 2, 2016, the Parties began their initial discussions of electronic discovery issues, including the storage and format of potentially discoverable ESI.

The Parties have agreed to meet and confer further for the purpose of negotiating a mutually-agreeable global ESI protocol. The Parties also agree, prior to the commencement of discovery, to work in good faith toward negotiating a global ESI protocol and [Proposed] Order thereon.

010541-20 879428 V1

**Nissan North America, Inc.**

Nissan proposes to produce static images of electronically stored documents and files in Bates-labeled, single-page Tag Image File Format (.tif) in a resolution that is a reasonable facsimile of the original, and which may be designated "confidential" pursuant to the terms of a Protective Order.  For the static images produced, the producing Party will maintain electronically stored files in native format (e.g. Excel, Word, and PowerPoint) except that the producing Party may copy the electronically stored information to an alternative storage device or media.  Nissan will meet and confer regarding the possible need for production of additional electronically stored information in its native format.

### b.      Preservation of ESI

In their June 2, 2016 initial conference, the counsel for the parties confirmed that they have instructed their clients to preserve litigation-related materials.

Plaintiffs underscore that Defendants should not alter or destroy relevant documents or data, regardless of what Defendants might otherwise do as a matter of routine or in the ordinary course of business.

### Nissan North America, Inc. Statement Re Preservation of ESI

Nissan has contacted key departments and personnel reasonably expected to have discoverable documents and information about design, field investigations, service campaigns, service bulletins, and complaints concerning the use of key fobs, in combination with a push-button ignition, and instructed them to preserve hard copy and electronic files, including emails. In addition, Defendant has and continues to preserve emails and electronic files.

Nissan will continue routine recycling of disaster recovery or back-up tapes and other media.  Nissan will continue other normal business activities including but not limited to routine deletion, compression of data, saving of new data, installation of new software and files, and changes to system architecture.  Nissan may also input, access, update or modify data in a database, resulting in the data being modified,

altered or overwritten where such data is modified, altered or overwritten in the ordinary course of business including, for example, updating customer contact or warranty information.  All such activities will be conducted in good faith in full recognition of the Parties' mutual obligation to locate and preserve relevant documents and data.

Plaintiffs should preserve all hard copy and electronic records concerning, and relevant components for, their vehicles as well as any hard copy or electronic records concerning, and relevant components for, any other putative class vehicles in their possession, custody or control.  Plaintiffs should preserve all hard copy and electronic records concerning the advertisements or other information they allegedly relied upon in making their purchasing or leasing decisions.

### c.   Scope of Discovery of ESI

The Parties agree that discovery of ESI should be permitted consistent with the Federal Rules of Civil Procedure including the amended Rule 26(b)(1) that went into effect as of December 1, 2015.  Counsel for the Parties acknowledge they will need to address additional issues concerning the scope of ESI discovery based.

The Parties are conferring on whether Defendants will provide Plaintiffs with a list of key custodians and on the limitation of discovery from such custodians.

### 4.   Claims of Privilege or of Protection as Trial-Preparation Materials

The Parties agree that a global protective order is warranted in these related actions and, prior to the commencement of discovery, the Parties shall work in good faith toward negotiating and submitting for the Court's approval a proposed Stipulated Protective Order regarding the exchange of confidential discovery materials.

### 5.   Whether Changes Should Be Made on the Limitations on Discovery

At present, Plaintiffs propose that the standard limits as provided in the Federal Rules of Procedure should apply.  This includes the standard limits for both depositions and written discovery (see Fed. R. Civ. P. 30(a), 33(a)(1)).  The parties

may revisit this issue with the Court at a later time if circumstances warrant changes to the default discovery limits.

### 6. Any Other Orders That the Court Should Issue Under Rule 26(c) or Rule 16(b) & (c)

At this time, the parties have not identified other orders to be issued under Rule 26(c) or Rule 16(b) & (c).

## K. Discovery Cut-off

The Parties jointly propose that the deadlines to complete fact discovery, and other pre-trial and trial deadlines, be set at a status conference shortly after the Court rules on Plaintiffs' Motion for Class Certification.

## L. Expert Discovery

Again, the Parties jointly propose that the deadlines to complete expert discovery, and other pre-trial and trial deadlines, be set at a status conference shortly after the Court rules on Plaintiffs' Motion for Class Certification.

## M. Dispositive Motions

On February 22, 2016, Defendants moved to dismiss the operative complaints in these related actions, which motions are now pending. The motions to dismiss are scheduled to be heard on June 27, 2016, the same day as the Rule 16 Scheduling Conference.

If the motions to dismiss are denied, and if class certification is subsequently granted, Defendants anticipate filing motion(s) for summary judgment.

The Parties jointly propose that the deadlines for briefing summary judgment motions, and the last date to hear any dispositive motions, be set at a status conference shortly after the Court rules on Plaintiffs' Motion for Class Certification.

## N. Settlement/Alternative Dispute Resolution (ADR)

The Parties select ADR Procedure No. 3 (private mediation), in accordance with General Order 11-10, § 5.1 and Local Rule 16-15.4. The Parties believe that private mediation should occur near or soon after the close of discovery.

010541-20 879428 V1

**O.     Trial Estimates**

The Parties believe that it would be premature and unreliable to estimate trial days and witnesses in this litigation prior to class certification.  The Parties jointly propose that they provide estimates of trial days and witnesses as part of a joint status conference statement to be filed after the Court rules on Plaintiffs' Motion for Class Certification.  The Parties agree that trial of these actions should be separate.

**P.     Trial Counsel**

Plaintiffs and the putative class will be represented at trial by Steve W. Berman and Lee M. Gordon of Hagens Berman Sobol Shapiro LLP, and Martis Alex and Brian Morrison of Labaton Sucharow.

Defendant Nissan will be represented at trial by William R. Sampson, Frank P. Kelly, and Amir Nassihi.

**Q.     Independent Expert or Master**

The Parties agree at this time that it is not necessary to appoint an Independent Expert or Master.

**R.     Timetable**

As discussed above, the Parties jointly propose the following pre-certification case schedule:

| DATE | EVENTS |
| --- | --- |
| 14 days after the Court's ruling on Motions to Dismiss and/or Strike | • Initial disclosures to be exchanged<br>• General discovery commences |
| 9 months after the Court's ruling on Motions to Dismiss and/or Strike | • Last day to file Plaintiffs' Motion for Class Certification |
| 8 weeks after filing of Plaintiffs' Motion for Class | • Last day to file Defendants' Oppositions to Certification Motion |

010541-20 879428 V1

| Certification | |
|---|---|
| 8 weeks after filing Oppositions to Plaintiffs' Motion for Class Certification | • Last day to file Replies to Defendants' Oppositions to Certification Motion |

Plaintiffs request that these related cases should stay on the same global pre-trial schedule.

In addition, Plaintiffs have requested that the Court's scheduling order provide that: (i) the Parties shall commence producing responsive documents within sixty (60) days of receiving requests for production of documents, and (ii) the Parties shall finish producing responsive documents as soon as practicable after production commences. Defendants object to this request.

The Parties jointly propose that the deadlines to complete fact discovery, expert discovery, dispositive motions, and other pre-trial and trial deadlines, be set at a status conference shortly after the Court rules on Plaintiffs' Motion for Class Certification.

The Parties have agreed that, if the class certification schedule outlined above is entered by the Court, Plaintiffs' witnesses in the class certification motion will be made available for deposition in the first four (4) weeks after filing the motion, to allow sufficient time for Nissan to prepare its opposition. The Parties have agreed that, if the class certification schedule outlined above is entered by the Court, Defendant's witnesses in opposition to the class certification motion will be made available for deposition in the first four (4) weeks after filing the opposition.

## S.    Other Issues

Issues may arise relating to non-English speaking witnesses or production of documents in a foreign language. For instance, Plaintiffs may need to take discovery from the parent corporation of a Defendant (i.e., Hyundai's parent company is a Korean corporation). In that case, if foreign language documents are produced, a protocol should be developed for production and translation of such documents.

1   DATED:  June 13, 2016                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

2
                                            By:  */s/ Steve W. Berman*
3                                                _____
                                                Steve W. Berman (pro hac vice)
4                                                Hagens Berman Sobol Shapiro LLP
                                                1918 Eighth Avenue, Suite 3300
5                                                Seattle, WA 98101
                                                Telephone: (206) 623-7292
6                                                Facsimile: (206) 623-0594
                                                steve@hbsslaw.com
7
                                                Lee M. Gordon (SBN 174168)
8                                                Elaine T. Byszewski (SBN 222304)
                                                Hagens Berman Sobol Shapiro LLP
9                                                301 N. Lake Avenue, Suite 203
                                                Pasadena, CA 91101
10                                               Telephone: (213) 330-7150
                                                Facsimile: (213) 330-7152
11                                               lee@hbsslaw.com
                                                elaine@hbsslaw.com
12
                                                Martis Ann Alex (SBN 77903)
13                                               Brian R. Morrison (pro hac vice)
                                                Labaton Sucharow LLP
14                                               140 Broadway
                                                New York, NY 10005
15                                               Telephone: (212) 907-0700
                                                Facsimile: (212) 818-0477
16                                               malex@labaton.com
                                                bmorrison@labaton.com
17
                                                *Attorneys for Plaintiffs*
18

19                                          **SHOOK, HARDY & BACON, LLP**
    DATED:  June 13, 2016
20

21                                          By:  */s/ Amir Nassihi*
                                                _____
22                                               Amir Nassihi
                                                One Montgomery St., Suite 2700
23                                               San Francisco, California 94104
                                                Telephone: (415) 544-1900
24                                               Facsimile: (415) 391-0281
                                                anassihi@shb.com
25
                                                *Attorney for Defendant NISSAN NORTH*
26                                               *AMERICA. INC.*

27

28

                                            -19-
010541-20 879428 V1

1    ** L.R. 5-4.3.4(a)(2)(i) Certification:

2

3        Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer of the document attests that

4    concurrence in the filing of the document has been obtained from each of the other

5    Signatories.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010541-20 879428 V1

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 13, 2016, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

                                    */s/ Steve W. Berman*
                                  STEVE W. BERMAN

JOINT RULE 26(f) REPORT